J-A16029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.D.N. A/K/A I.N., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.N., FATHER | : : : : : : : | No. 3691 EDA 2017 |

Appeal from the Decree October 4, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000275-2017,
CP-51-DP-0042521-2010, FID:51-FN-4719998-2009

BEFORE: BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 03, 2018**

A.N. (Father) appeals from the trial court's order involuntarily terminating his parental rights to his minor daughter, I.D.M., a/k/a I.N. (Child) (born 3/2010). After careful review, we affirm.

Child first became known to the Philadelphia Department of Human Services (DHS) in March 2010 when it received a report that S.G. (Mother)[1] tested positive for cocaine at Child's birth. Child was delivered at 30 weeks' gestation and remained in the neonatal intensive care unit (NICU) for 6 weeks following her birth. In March 2013, DHS received another report alleging that Mother had choked and hit Child. In June 2014, DHS received a third report alleging truancy with regard to Child's sibling, Q.G. On September 30, 2014,

_____

[1] Mother's rights to Child were also involuntarily terminated. However, she is not a party to this appeal.

DHS filed a dependency petition for Child; Child was adjudicated dependent on October 23, 2014, and ordered to remain in parents' care with DHS supervision.

DHS established the following Family Service Plan (FSP) for Father: referral to clinical evaluation unit (CEU) for dual diagnosis assessments; submission to drug screens (including 4 random screens before next court date), and compliance with all CEU recommendations. In November 2014, Father provided documentation that he had enrolled at the Wedge, a substance abuse/recovery facility, as well as documentation of his prescription medication. A clinical director also verified that Father was admitted into intensive outpatient treatment in September 2014. In August 2015, the court discharged Child from DHS supervision and placed her in the custody of DHS; Child was placed in a foster home with her sibling, Q.G.

At permanency review hearings held from December 2014 to December 2016, evidence was presented that showed Father attended only 40% of his scheduled treatment sessions. Father tested positive for cocaine fifteen times from November 4, 2014 to November 11, 2016. In December 2016, DHS revised Father's FSP, setting the following parental objectives: attend supervised visits with Child; receive parenting education; locate and obtain suitable housing; and obtain and maintain employment. On December 20, 2016, the trial court decreased Father's supervised visitation to biweekly visits and ordered that all visits be held at the agency and be line-of-sight and line-of-hearing.

On March 6, 2017, DHS filed the instant petition to involuntarily terminate Father's parental rights to Child pursuant to sections 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) of the Adoption Act.[2]  On October 4, 2017, the court held a termination hearing at which a DHS social worker case manager and Father testified.  Following the hearing, the court entered an order involuntarily terminating Father's parental rights.  Father filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  He raises the following issues for our consideration:

(1)   Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act[,] 23 Pa.C.S.A. §[§] 2511(a)(1), (a)(2), (a)(5), and (a)(8)[,] when . . . [F]ather contends [he] made progress towards working and meeting the FSP goals.

(2)   Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act[,] 23 Pa.C.S.A. § 2511(b).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.  *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.  *Id.*

It is well established that:

---

[2] 23 Pa.C.S. §§ 2101-2910.

> [i]n a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Instantly, Father complains that he neither evidenced a settled purpose of relinquishing his parental claim nor failed to perform his parental duties, where he actively engaged in mental health and drug and alcohol programs, consistently attended visits with Child prior to the filing of the termination petition, and made application for public housing (despite the fact that DHS terminated the processing of his housing paperwork) – all efforts to comply with his FSP.

At the termination hearing, DHS Social Worker, Amos Suah, testified that Father: participated in some FSP meetings; had never completed a course of treatment for his cocaine addiction; missed (unexcused) 21 of his

- 4 -

42 treatment sessions; had all positive (cocaine) drug screenings since his last report; consistently attended supervised bi-weekly visits with Child; completed parenting classes; and did not verify legitimate employment with DHS. N.T. Termination Hearing, 10/4/17, at 23-35. Mr. Suah also testified that Child is bonded with foster parents and that Child would not suffer irreparable harm if Father's parental rights were terminated. *Id.* at 36

Case Manager Lindsay testified on cross-examination that Father's visits with Child were appropriate and that Child was bonded with Father and loved Father. *Id.* at 45. When asked what effect termination would have on Child, Ms. Lindsay testified that Child would miss Father, "but [Child] also understand[s] that [her] parents have substance issues and [she] understands that my job, as a social worker, is to make sure [she's] safe." *Id.* at 48. Ms. Lindsay concluded her testimony on cross-examination, stating, "So all I want for them is to be safe. We would prefer for them to be reunified, but if [Father's] not being compliant with [his] FSP goals, that's up to the parent." *Id.*

Father testified that he had given DHS paystubs from the temporary work agency where he was employed, that he was currently living with his sister, and that he currently was in a recovery program at the Wedge. *Id.* at 50-52. While admitting to his cocaine addiction, Father asked the court for "some more time, just a little more time to get [him]self together." *Id.* at 54.

After a careful review of the record, it is clear that the trial court did not abuse its discretion in terminating Father's parental rights under section

2511(a)(2);[3] the decision is supported by competent, clear and convincing evidence in the record. *In re A.R.*, *supra*.

Specifically, Father's inability to rehabilitate and overcome his cocaine addiction, failure to progress from supervised to unsupervised visitation with Child, and inability to complete his FSP basic need goals of securing housing[4] and verifying employment warrants termination. As this Court has noted, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities[.]" *See In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted) ("[A] child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'").

Father also contends that the court improperly terminated his rights where there was clear and convincing evidence that Father and Child had a

---

[3] Pursuant to 23 Pa.C.S.A. § 2511(a)(2), the rights of a parent may be terminated on the following ground:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

[4] Social worker Suah testified that once the goal had changed from reunification to adoption, his DHS supervisor told him that agency protocol did not permit him to process Father's housing paperwork. N.T. Termination Hearing, 10/4/17, at 44.

demonstrated bond, and, thus, termination was not in Child's best interest under section 2511(b).

We note that the mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination would "destroy an existing, necessary and beneficial relationship." **In re Adoption of T.B.B.**, 835 A.2d 387, 397 (Pa. Super. 2003). When determining whether a bond exists between a parent and a child, a court is not required to rely upon expert testimony; section 2511(b) also does not requires a formal bonding analysis. Social workers and case workers can offer evaluations as well. **In re Z.P.**, **supra** at 1121 ("Above all else, adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights.").

At the time of the termination hearing, Child had been in foster care for over two years; she had developed a strong bond with her foster family, which included her biological sibling, Q.G. **See In re T.S.M.**, 71 A.3d 251, 268 (Pa. 2013) (common sense dictates that courts considering termination must also consider whether children are in pre-adoptive home and whether they have bond with foster parents). While case manager Lindsay testified on cross-examination that Child was bonded with Father, loved Father, and would miss Father, she also qualified her answer with the statement that Child "also understand[s] that [her] parents have substance issues and [she]

understands that my job, as a social worker, is to make sure [she's] safe. ***Id.*** at 48.

Here, there was testimony that Child had formed a loving and secure bond with her foster parents, her biological sibling lives in the same foster home, and foster parents are an adoptive resource. Any feelings of loss that Child would experience if she were unable to see Father are outweighed by the safety and permanency that Child would attain if she were to be adopted by foster parents and continue to live with her biological sibling. ***T.S.M.***, ***supra*** (courts must determine whether trauma caused by breaking child's bonds to biological parents who have proven incapable of parenting is outweighed by benefit of moving child toward permanent home).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/18